**Joseph X. BETHEA**

v.

**Mr. DAGGETT, Acting Warden.**

**Civ. A. No. 13845.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Nov. 6, 1970.

Joseph X. Bethea, pro se.

John Stokes, U. S. Atty., Allen I. Hirsch, Asst. U. S. Atty., for respondent.

## ORDER

ALBERT J. HENDERSON, Jr., District Judge.

Petitioner, a federal prisoner incarcerated in the United States Penitentiary, Atlanta, Georgia, moves the court to grant his application for a writ of mandamus directing the warden of the federal penitentiary to permit petitioner the free exercise of his religious beliefs. In answer thereto, the government has filed its response to the court's order to show cause, and petitioner has filed with the court his traverse to the government's response.

■ This circuit long ago recognized that prisoners do not forfeit their constitutional rights merely because they have been incarcerated. Tabor v. Hardwick, 224 F.2d 526 (5th Cir. 1955); see Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948); Pierce v. LaVallee, 293 F.2d 233 (2nd Cir. 1961). With regard to the rights of Black Muslims in the Atlanta Federal Penitentiary, it is beyond question that arbitrary discrimination based upon the religious or racial beliefs of those concerned is constitutionally impermissible. But rules and regulations are constitutionally valid when they are reasonable and justifiable in the administration of a large prison population, in light of the necessity to maintain prison discipline, and control any dangers and hazards presented. Walker v. Blackwell, 411 F. 2d 23 (5th Cir. 1969); see Jackson v. Godwin, 400 F.2d 529 (5th Cir. 1968).

Petitioner, in the case at bar, alleges that the prison authorities have refused to permit him to pray five times daily, and have placed him in segregation for attempting to do so; that the prison officials do not provide the Black Muslims office space to the same extent as that provided for Catholic, Protestant and Jewish inmates; that the prison administration will not employ a Muslim as clerk in the religious offices; and, finally, that the respondent has not provided petitioner with the same religious attire supplied prisoners of other faiths. In light of the principles enunciated in the above cases and the actual facts as they appear in the case at bar, the court finds petitioner's contentions to be wholly without merit.

■ The guiding standard by which the practices of the penitentiary must be judged is the one stated in *Jackson, supra* at 541, requiring the government to show some substantial and controlling interest when subordination or limitation of constitutional rights is in question. The court, however, does not reach the application of the above test, because of the court's finding that the facts do not substantiate petitioner's contention that he has been denied his constititutional rights in the free exercise of his religious beliefs.

First, petitioner contends that he is not permitted the right to pray five times daily, and that on one ocasion when he and others were gathered together for the purpose of conducting a prayer session, he was placed in segregation for his attempts in this regard. The true reasons behind petitioner's being placed in segregation, however, are (1) that petitioner and eight others

were assembled in an area where they were not permitted, and (2) petitioner's continued refusal to return to his assigned area after being so directed by the prison officer. It was for this latter defiance of the officer's order that a misconduct report was lodged against petitioner, and not because he attempted to pray as petitioner contends. In addition, respondent specifically denies that petitioner or the other Black Muslim inmates are prohibited from performing their religious rites. The only restriction placed upon petitioner is that he must confine his practices to portions of the penitentiary where his presence is permissible. More specifically, the affidavit of Mr. J. A. Thompson, Corrections Supervisor, reads as follows:

> * * * Bethea was told the institution did not care how many times a day they wanted to pray but according to Bethea's own statement, it was not necessary for them to pray as a group. He was told he could pray in his cell, on his work assignment or any other area where he was permitted to be as long as it did not interfere with the rights and privileges of other inmates. Policy Statement A7300–36 states inmates are not permitted on ranges other than the one assigned and visiting between cells is not permitted. * * *

 The court finds that petitioner has not been denied the right to freely practice his religion, and that the restrictions imposed are a necessary concomitant to the fact of incarceration. Additionally, the court will hold respondent faithful to its allegations by continually according the inmates of said penitentiary the right to practice their chosen religion limited only by its possible undue interference with the maintenance of discipline and control.

Petitioner's other allegations pertain to the alleged deprivation of religious benefits accorded inmates of other religions, to-wit, office space, a clerk of their choosing, and appropriate religious attire. It appears, however, that meeting space is provided the Black Muslim inmates and that said inmates do hold meetings twice weekly (Sunday afternoon and Thursday evening), further that the Muslims have been permitted to select one of their number to serve as minister. Father Beane, the Catholic Chaplain at the institution, serves as their advisor in all religious matters, reproduces religious materials for the Black Muslims, arranges for meeting space, permits them the use of a tape recorder, and coordinates the purchase of various religious books for the Muslim group from the funds of the institution.

The court hereby finds that the actions of the respondent are not violative of the fundamental right to freely practice one's religion. Petitioner has not demonstrated that there is either (1) deliberate discrimination or (2) an even handed application of an inherently discriminatory rule. Jackson v. Godwin, *supra*, Walker v. Blackwell, 411 F.2d at 25.

Consequently, petitioner has failed to show the court that degree of infringement of constitutional rights sufficient to warrant judicial intervention, and, therefore, the petition is hereby denied.